Theo Hanson, Plaintiff
10831 Quail Canyon Road
El Cajon, CA 92021
(619) 920-3017
theo.hanson@yahoo.com

**FILED**

Jul 16 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/jennifer_____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THEO HANSON,** <br><br>    **Plaintiff,** <br><br> **vs.** <br><br> **JAKE P. NOCH, in his individual capacity;** <br><br> **VITO MICHAEL ROPPO, in his individual capacity;** <br><br> **RICHARD GORA, in his individual capacity;** <br><br> **GORA LLC, a Connecticut Limited Liability Company;** <br><br> **PRO MUSIC RIGHTS, LLC, a Florida Limited Liability Company;** <br><br> **PRO MUSIC RIGHTS DISTRIBUTION, LLC, a Florida Limited Liability Company;** <br><br> **PRO MUSIC RIGHTS PUBLISHING GROUP, LLC, a Florida Limited Liability Company;** <br><br> **BRAZY RECORDS LLC a Florida Limited Liability Company;** <br><br> **SOSA ENTERTAINMENT LLC, a Florida Limited Liability Company;** <br><br> **and Does 1 – 10;** <br><br>    **Defendants.** | **CASE NO.** \_\_\_'19CV1326 BAS WVG\_\_\_ <br><br><br> **PLAINTIFF'S VERIFIED ORIGINAL** <br> **COMPLAINT FOR DAMAGES AND** <br> **FOR DECLARATORY AND** <br> **INJUNCTIVE RELIEF** <br><br><br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Theo Hanson brings this action for damages and for declaratory and injunctive relief against the above named corporate and individual defendants. Plaintiff's Complaint against these defendants asserts fraud, defamation, violation of securities regulations, violations of the RICO Act, tortious interference with contract, and the intentional infliction of emotional distress. For his Complaint against the defendants plaintiff THEO HANSON states as follows:

### I.     JURISDICTION AND VENUE

1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs exceeds the sum of $75,000.00. The Court has supplemental jurisdiction over any state claims under 28 U.S.C. § 1367 because the acts alleged herein arise out of the same transaction or occurrence and/or series of transactions or occurrences. Defendants' actions and internet projections and publications in this district constitute sufficient minimum contacts with this district so as to make the exercise of jurisdiction by this court permissible under traditional notions of fair play and substantial justice.

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because defendant transacts business within this district, and a substantial part of the events and omissions giving rise to this claim occurred in this district.

### II.     PARTIES AND SERVICE OF PROCESS INFORMATION

3.     Plaintiff THEO HANSON is a resident of San Diego County, and is a citizen of the State of California.

4.     Defendant JAKE P. NOCH is a resident and citizen of the State of Florida, and is sued both individually and as the manager/CEO of each of the defendant LLC's sued herein.   Service may be had upon him both  individually and as an officer of the various LLC's by serving him at his address located at 1978 Gulf Shore Blvd. S., Naples, FL  34102, where he lives with his mother.

5.     Defendant VITO MICHAEL ROPPO, is a resident and citizen of the State of Florida, and is sued both individually and as the manager/CEO of each of the defendant LLC's sued herein. Service may be had upon him individually and as an officer of the various LLC's by serving him at his address located at 3811 Airport Pulling Rd. N., Ste 203, Naples, FL  34105.

6.     Defendant RICHARD GORA,  is a resident and citizen of the State of New York.   He may be served at The Wagoner Firm, PLLC, 8 Thurlow Terrace, Albany, NY   12207.

7.     Defendant GORA LLC, a Connecticut Limited Liability Company, is located at 9 W. Broad St., Suite 550, Stamford, CT 06902, and may be served by serving Richard Gora, its designated agent for service of process at  30 Quarter Horse Drive, Monroe, CT  06468.

8.     Defendant PRO MUSIC RIGHTS, LLC, a Florida Limited Liability Company, is located at 1978 Gulf Shore Blvd. S., Naples, FL  34102 (the home address of defendant Jake P. Noch), and may be served by serving Vito Roppo, its designated agent for service of process, at 3811 Airport Pulling Rd. N., Ste 203, Naples, FL  34105.

9.     Defendant PRO MUSIC RIGHTS DISTRIBUTION, LLC, a Florida Limited Liability Company, is located at 1978 Gulf Shore Blvd. S., Naples, FL  34102 (the home address of defendant Jake P. Noch), and may be served by serving Vito Roppo, its designated agent for service of process, at 3811 Airport Pulling Rd. N., Ste 203, Naples, FL  34105.

10. Defendant PRO MUSIC RIGHTS PUBLISHING GROUP, LLC, a Florida Limited Liability Company, is located at 1978 Gulf Shore Blvd. S., Naples, FL 34102 (the home address of defendant Jake P. Noch), and may be served by serving Vito Roppo, its designated agent for service of process, at 3811 Airport Pulling Rd. N., Ste 203, Naples, FL 34105.

11. Defendant BRAZY RECORDS LLC, a Florida Limited Liability Company, is located at 1978 Gulf Shore Blvd. S., Naples, FL 34102 (the home address of defendant Jake P. Noch), and may be served by serving Vito Roppo, its designated agent for service of process, at 3811 Airport Pulling Rd. N., Ste 203, Naples, FL 34105.

12. Defendant SOSA ENTERTAINMENT LLC, a Florida Limited Liability Company, is located at 1978 Gulf Shore Blvd. S., Naples, FL 34102 (the home address of defendant Jake P. Noch), and may be served by serving Vito Roppo, its designated agent for service of process, at 3811 Airport Pulling Rd. N., Ste 203, Naples, FL 34105.

13. Defendant FREE DOPE, LLC, a Florida Limited Liability Company, is located at 1978 Gulf Shore Blvd. S., Naples, FL 34102 (the home address of defendant Jake P. Noch), and may be served by serving Vito Roppo, its designated agent for service of process, at 3811 Airport Pulling Rd. N., Ste 203, Naples, FL 34105.

### III. FACTS COMMON TO ALL COUNTS

14. Defendant JAKE NOCH is a young, enterprising 20-year-old with no business education and no significant experience with corporate securities. Instead, he in actuality is a "rap artist" and self-described "music producer" that fancies himself as a "financial genius". In his brief "career", he has a history of financial fraud and violations of copyright infringement both within and without the music industry. According to public records, the defendant NOCH has formed some fifteen companies/LLC's, within the past eighteen months (i.e., since Jake Noch reached

the age of 18 years old).  Most of those companies are now listed as inactive.  The defendant

Richard Gora similarly (and modestly) describes himself as follows:  "Rich is a super intelligent

attorney with a skilled chess grandmaster mindset."  The humility of these defendants is

astonishing.

15.     The Independent Film Development Corporation [hereinafter designated as "IFLM"]

was formerly a Nevada corporation traded as an OTC stock until September 29, 2017, when it

was dissolved.[1]  A claim can be asserted against a dissolved corporation only to the extent of

the corporation's undistributed assets.  At all relevant times, IFLM has remained dissolved and

has no assets.

16.     On May 28, 2019, individual defendants NOCH, ROPPO, and GORA, acting

individually and on behalf of the named corporate defendants, claim that they purchased a

significant amount of common shares of stock in IFLM.  It is not believed that any due diligence

was accomplished by the defendants prior to attempting to make such a purchase, sale, or swap

of IFLM's corporate assets, liabilities, or interfere with its management.

17.     Several days later (on June 3, 2019), defendants sent an email to the former CEO of

IFLM inquiring about the details of IFLM corporate management and structure in an attempt to

acquire sufficient shares to control IFLM and to have defendant NOCH named as the new CEO.

18.     That same day, plaintiff HANSON contacted defendant NOCH and informed that the

defendant's purchase and sale of securities by defendants was not authorized and that he, THEO

HANSON, was under contract with the former corporate management team to be appointed as

CEO, this in accord with the IFLM corporate articles and bylaws.

_____

        1 Subsequently, IFLM was re-domiciled in Wyoming and registered with the Wyoming
Secretary of State.

19. The OTC Market Research Report found that "over a period of 5 trading days from June 10th – June 14th, Jake put out some tweets that deserve to be preserved for all time including price targets of $1.67/share, nonsense about bringing a billion dollars in assets into IFLM, future dividends, and of course tweets saying he was still buying shares off the open market." The OTC Market Research Report went so far as to take note of NOCH's having compared himself to a picture of Homer Simpson living it up smoking a cigar being lit by a hundred-dollar bill. Likening himself to Homer Simpson, Jake Noch apparently thinks he hit the jackpot!

20. On June 14, 2019, plaintiff HANSON was designated as the CEO of IFLM. On that date, HANSON's possession of preferred shares was also confirmed..

21. After an exchange of emails it became apparent to plaintiff that defendants were not interested in any legitimate business transaction or dealings with HANSON or with IFLM, but were instead merely "fishing" for information in order to "steal" the company without the consent or the authorization of those in charge of IFLM's affairs. The defendant NOCH was somewhat miffed at the refusal of HANSON to recognize the legitimacy of NOCH and his co-defendants as shareholders. In retaliation, defendants (led by defendant NOCH) commenced a campaign to publicly belittle and degrade plaintiff's reputation and standing while simultaneously engaging in what has popularly become known as a "pump-and-dump" scheme. This amounted to nothing more than a clumsy (and markedly juvenile) attempt to use the defunct IFLM corporation as a tool to dupe the public and financially profit by the fraudulent sale of securities in IFLM, a corporation that remained dissolved and non-existent with no assets.

22. Defendant JAKE NOCH boasts that he and his shell corporation, the defendant PRO MUSIC RIGHTS LLC, is the "third-largest U.S. Performing Rights Organization representing

the intellectual property rights of thousands of songwriters, composers, and publishers [claiming] to work tirelessly to protect over 2,000,000 copyrighted musical compositions from unlawful copyright infringement." There's puffing and then there's puffing - but this is ridiculous. NOCH and defendant PRO MUSIC RIGHTS LLC (a company owned by defendant NOCH) further claim to have "entered into a strategic partnership agreement with Richard Gora of Gora LLC, a law firm providing sophisticated intellectual property, licensing and enforcement counsel for Pro Music Rights' portfolio of copyrighted musical compositions." Lastly, NOCH implicates defendant Vito Roppo in the scheme stating, "Vito Roppo, an advisor to Pro Music Rights, adds "Jake Noch is the future of the music industry, and his portfolio of artists will become the worldwide leader under Jakes's leadership."

23. Each member of a partnership or joint venture is vicariously liable for the tortious conduct of another member committed in the course and scope of the affairs of the partnership or joint venture.

24. The defendants' brazen interference with the business affairs of both plaintiff and IFLM can fairly be categorized as the result of acts instigated by an uneducated, inexperienced and impetuous 20-year old child. As described herein the defendants' reckless actions have exposed the defendants, and each of them, to substantial joint and several liability.

### FIRST CAUSE OF ACTION – FRAUD

25. Plaintiff hereby incorporates the previously stated paragraphs as fully set forth herein.

26. Defendants induced innocent investors to purchase shares in a corporation that was, at all relevant times, defunct and dissolved.

27.     The defendants both individually and collectively knowingly made false representations with the intent to deceive or induce reliance on the part of unwitting investors that justifiably relied upon defendants' gross misrepresentations and resulted in damages to the plaintiff and others.

28.     Plaintiff requests joint and several judgment against the defendants, and each of them, for compensatory damages, punitive damages, and costs.

### SECOND CAUSE OF ACTION - DEFAMATION
### DEFAMATION, COUNT ONE - Libel

29.     Plaintiff hereby incorporates the previously stated paragraphs as fully set forth herein.

30.     Defendant NOCH makes no secret of his intent to attempt to buy common stock of IFLM in order to take control of the company.   Defendant NOCH states that "IFLM has been mismanaged and that its board of directors and management have been paying themselves inflated salaries."   He further published and stated in writing the following, "I picked IFLM because I am Tired of Investors [sic] taking losses while management teams pay them selfs [sic] Inflated salaries & I want to make an example that companies like IFLM can be turned around.   .   .   I am working on obtaining the shareholder list to call a special shareholder meeting, where *I will call a shareholder vote to replace current management with experienced professionals to manage IFLM, including myself as the Chairman of the Board and the CEO*." (emphasis supplied)   Some might consider Noch's remarks as being as foolish and self-serving as they are patently false.   Who does this strident 20 year old rap artist think he is?  And how could he be tired of anything – he's twenty years old!

31.     This false and persistent bluster would be laughable if Noch's recklessness were not causing so much harm to the plaintiff and others on the receiving end of his malicious and deceitful obsession.   Defendant NOCH was not even 18 years old yet when the corporation he

randomly targeted (IFLM) was dissolved by the Nevada Secretary of State in 2017. Neither the plaintiff nor any other individual associated with IFLM has received any salary in this matter. The defendant NOCH just made that up.

32.     As for his expressed intent to "call a shareholder vote", the OTC Market Research Report noted, "Simply put, no matter how much common stock Jake P. Noch buys, his shares have no voting power so he cannot use a shareholder vote to effect any changes to IFLM." Again, defendant NOCH just made that up.

33.     That OTC Market Research Report further concluded, "In order to have 25% of the shares that are entitled to vote you have to own at least 3 shares of Series AA preferred stock. When reality finally did start to set in for Jake about the preferred stock [issue], Jake took a new approach to the situation saying that he'd go through the court system to get control of IFLM. It almost seems like he [defendant NOCH] was just tweeting out whatever idea was given to him by traders in private or in comments to keep the play alive." It appears that defendant NOCH is frustrated that no one is taking him seriously, and now he has gotten himself in over his head. If his goal was to accomplish some kind of corporate reform to eliminate exorbitant corporate salaries, he picked the wrong company. His actions are irresponsible and destructive. He does not deserve to be taken seriously. He is wasting our time, and the attorneys encouraging him should be sanctioned for filing a frivolous lawsuit.

34.     Cal. Civ. Code §45 provides a codified definition for libel. Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which tends to injure him in his occupation. The most cursory review

of the factual grounds underpinning this complaint clearly demonstrates NOCH's personal liability and the vicarious liability of the remaining named defendants.

## DEFAMATION, COUNT TWO – Portrayal in False Light

35. Plaintiff hereby incorporates the previously stated paragraphs as fully set forth herein.

36. Again, the OTC Market Research Report is instructive. "Jake's latest disappointing, desperate, immature act is trying to defame Theo Hanson by posting information about some other completely different person whose name is Theodore Hansen (with an E) that got in trouble with the Utah Securities Commission."

37. In a false light claim, the plaintiff must prove the following elements: (1) The defendant published some information about the plaintiff; (2) The information must portray the plaintiff in a false or misleading light; (3) The information is highly offensive or embarrassing to a reasonable person of ordinary sensibilities; and (4) The defendant must have published the information with reckless disregard as to its offensiveness. "In order to be actionable, the false light in which the plaintiff is placed must be highly offensive to a reasonable person. Although it is not necessary that the plaintiff be defamed, publicity placing one in a highly offensive false light will in most cases be defamatory as well." *Fellows v. National Enquirer* (1986) 42 Cal.3d 234, 238–239 (228 Cal.Rptr. 215, 721 P.2d 97)

## THIRD CAUSE OF ACTION – VIOLATION OF SECURITIES REGULATIONS

38. Plaintiff hereby incorporates the previously stated paragraphs as fully set forth herein.

39. The defendants, and each of them, violated a host of prohibited securities violations at both the federal and state level. These violations included, but are not limited to insider trading, fraudulently promoting the transfer of securities without statutory authority to do so, and failure to disclose pertinent facts to prospective investors that were required to be disclosed.

40.     Penny stock exchanges – where disgraced traders like Bernie Madoff got their start – are capitalism at its most speculative and treacherous.   Penny markets have become a netherworld full of con artists, where fraud is practiced on an industrial scale.

41.     In this case, the scheme of the defendant NOCH and the other corporate and individual defendants was to obtain control of the defunct IFLM corporation and use that control as a vehicle to promote their nefarious attempt to defraud potential investors into buying worthless stock in order to "pump-up" the value of the penny stock and make a quick cash profit.   In effect, the representations made by defendants were so fantastical as to have no basis in reality. For example, defendant NOCH claimed on June 13, 2019, that his "target price of $1.67 a share of his [defendant NOCH's] 281,519,542 shares[2] . . .   would be worth $470,000,000 United States Dollars & [that he] would also like to see IFLM pay a dividend."   Assuming that there even was a purchase of shares by NOCH or anybody else, either by purchase, sale, or swap, and given that NOCH admits that the value of each of the 281 million shares was allegedly valued at between $ .0001 and $ .0005 (between $28,151.95 and $140,759.77), those figures are a far cry from NOCH's boast of $470 million.   Fantastical indeed!

42.     The defendants issued stock to insiders.   The defendants put their shares into shell companies while the name of the real owner stays hidden.   Defendants called possible "marks" to sell them shares using high pressure and fraudulent sales tactics.   It is believed that the defendants were paid to hype the stock via newsletters, spam emails, social media, and message boards.   Likewise, exuberant company press releases created the illusion of a thriving enterprise, when in reality it was a defunct corporation with no assets.   The defendant insiders traded and swapped their own shares back and forth, artificially pumping the stock price and

---

2 As of June 10, 2019, defendant NOCH's total holdings were allegedly 281,519,542 shares.

generating buzz. They then sold their shares to newcomers attracted by the hype.   As the insiders cash out, the stock will inevitably collapse.   This classic pattern of a pump-and-dump cycle has become a habitual pattern with NOCH and the other defendants.   In the end, any legitimate investors stand to be left with the defendants' worthless promises and paper stock that is nothing more than worthless rubble.

43.   The defendants' actions and omissions are in violation of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

44.   By reason of the defendant's violations, the plaintiff is entitled  to statutory damages and costs of suit.

## FOURTH CAUSE OF ACTION - VIOLATIONS OF THE RACKETEERING INTERSTATE CORRUPT ORGANIZATION ACT (R.I.C.O.) (18 U.S.C. § 1961 et seq.)

45.   Plaintiff hereby incorporates the previously stated paragraphs as fully set forth herein.

46.   Defendants are persons within the meaning of 18 U.S.C. § 1961(3), and conducted and participated, both directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C.A. § 1692(c).

47.   The predicate acts which constitute this pattern of racketeering activity were part of a scheme to swindle the plaintiff and others similarly situated by (1) scheming to defraud potential investors,  and (2) falsifying financial records to conceal and obscure the terms and conditions of their deceit.

48.   To execute this scheme, the defendant used the United States Postal Service, caused items to be delivered across state lines by interstate carrier, and used said services to distribute notices that were false, misleading, and contrary to law that were ultimately designed to induce

and compel potential investors to part with large sums of money for the profit of the defendants' enterprise. Defendants transmitted and received messages by wire, including but not limited to telephone, fax, and Internet communications.

49.     These acts constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

50.     By reason of the defendant's violations, the plaintiff is entitled, pursuant to 18 U.S.C. § 1964(c), to treble damages and costs of suit.

### SIXTH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

51.     Plaintiff hereby incorporates the previously stated paragraphs as fully set forth herein.

52.     In their zeal to complete their nefarious "get rich quick" scheme, the defendants interfered with the contractual relationship between the plaintiff and the former corporate leadership of the IFLM corporation.

53.     Accordingly plaintiff is entitled to judgment for compensatory damages, punitive damages, and costs.

### SEVENTH CAUSE OF ACTION – INENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54.     Plaintiff hereby incorporates the previously stated paragraphs as fully set forth herein.

55.     The actions of the defendants, and each of them, caused the plaintiff to suffer anguish, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

56.     Plaintiff is entitled to a judgment for compensatory damages, punitive damages, and costs.

## EIGHTH CAUSE OF ACTION – REQUEST FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

57.     Plaintiff re-alleges and incorporates the allegations of this Complaint as if fully stated herein.

58.     Unless defendants are immediately enjoined, plaintiff will suffer irreparable injury.

59.     Plaintiff has no adequate remedy at law. Without court intervention and an injunction, plaintiff will suffer actual and irreparable injury to his property interests and personal rights by the mere fact that defendants' defamatory tweets can be retweeted and republished forever by third-parties.

60.     There is a substantial likelihood that plaintiff will succeed on the merits of his claims.

61.     The requested injunction is reasonably necessary to protect the legal rights of plaintiff and will have no adverse effect on the public welfare.

## V.     DAMAGES

62.     Plaintiff incorporates each of the within paragraphs as if fully set forth herein.

63.     As a direct or proximate cause of one or more of the aforementioned violations by defendants of plaintiff's constitutional rights and state law claims, the plaintiff suffered monetary damages in an amount that exceeds $75,000.00 and other damages and expenses for which the defendants, and each of them, are liable.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a.     Find that the defendants committed the violations alleged above.

b.     Enter orders consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining defendants and their officers, agents, servants, employees

and attorneys, and those persons in active concert or participation with them, from directly or indirectly violating Sections 5(a), 5(b), and 5(c) of the Securities act, 15 U.S.C. sections 77e(q) and (c).

c. Order the defendants to disgorge all ill-gotten gains that they received as a result of the acts and courses of conduct complained of herein, together with prejudgment interest thereon.

d. Order defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act.

e. Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any equitable application or motion for additional relief within the jurisdiction of this Court.

f. Award joint and several judgment against defendants for plaintiff's actual damages;

g. Award joint and several judgment against defendants for punitive damages;

h. Award joint and several judgment against defendants for plaintiff's witness fees, court costs and other litigation costs; and

i. Any other legal and/or equitable relief as the Court deems appropriate.

Theo Hanson
10831 Quail Canyon Road
El Cajon, CA 92021
(619) 920-3017
theo.hanson@yahoo.com

## VERIFICATION

I, Theo Hanson, am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at El Cajon, California.

Date: 7·16·19

Theo Hanson

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____, 2019.

NOTARY PUBLIC

DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS113632
Cashier ID: fjaimes
Transaction Date: 07/16/2019
Payer Name: THEO HANSON
------------------------------------
CIVIL FILING FEE
 For: THEO HANSON
 Case/Party: D-CAS-3-19-CV-001326-001
 Amount:      $400.00
------------------------------------
CREDIT CARD
 Amt Tendered: $400.00
------------------------------------
Total Due:      $400.00
Total Tendered: $400.00
Change Amt:     $0.00


There will be a fee of $53.00
charged for any returned check.